Appeal No. 21-1144 Attorney Pinta, please introduce yourself for the record and proceed with your argument. May it please the Court, Ian Pinta on behalf of J-Way Southern, Inc. Good morning, Mr. Pinta. Good morning. Your Honor, may I have two minutes for rebuttal? Yes. Thank you. Your Honor, this appeal presents three issues. The first is whether the improper default termination claim that we've asserted was timely because the notice of termination included a defective notice with regards to the appeal rights and whether or not my client was prejudiced by that defective notice. The second issue is whether the improper default termination claim is timely under the Filfer Doctrine to the extent that the re-procurement costs are damages. Number three, whether the breach of contract claims are timely because they are separate and distinct from the improper default termination claim. With regards to the first issue, I think it's important to remember that it's a very complex have to be complied with. These regulations, according to the Decker decision, are for the benefit of the contractor. Here the important regulation is FAR 33.211. That regulation says that when a written decision is given and a default termination notice is considered a written decision, that that notice must say that it is a final decision and that this final decision is appealable to either a board within 90 days or a court within 12 months. Here I don't think there's any genuine dispute that the notice that my client received was defective. I think even the government concedes as much that the notice that it sent did not comply with FAR 33.211. I think the primary issue is whether or not my client was prejudiced. Without a doubt, the record is clear that it was. What happened here was we received the defective notice, we reviewed it, we compared the notice which just says that this is a decision that is appealable under the Disputes Act, under the Disputes Clause. There's no mentioned or reference that's a final decision. There's no reference to the notice that has to appeal within 90 days or within 12 months or to where. Counsel, how hard is it, in light of what the contract says, how hard is it to go to the regulation which then takes you right to the statute which spells out these two alternatives? I just don't, I mean, your client's not, it's a good-sized business, it's got an attorney. I mean, this is sort of, with all due respect, this is basic stuff. I mean, what's unreasonable about expecting a company with the benefit of counsel, given what the contract itself advises about how any appeal should be pursued? You go to the regulation, regulation takes you to the statute. I don't, what's difficult about any of that?  I appreciate the point you're making. The difference is that the regulation says that the decision itself must say it's a final decision and appealable to a board within 90 days or within 12 months, but when we review the notice that we receive, it's not... The dispute, it sends you to the Disputes Clause, you're correct, it doesn't have the correct information advising of the appellate rights specifically, but it sends you to the sources where you can find the appellate information. And once again, an attorney looking at this, one would think would follow the sources. That's exactly what we did, Your Honor, and we looked at the Disputes Clause, so we looked at the regulation, did not believe it was a final or appealable decision because the decision itself did not say it was final or appealable as required by the regulation, and then we looked at the Disputes Clause, and the Disputes Clause mentions or discusses how you file a certified claim to the contracting officer within six years, and that's exactly what we did. Counsel, how could you not understand that this was a final decision? I mean, basically, the department's saying, we're done with you. We gave you a second chance to do the work that you said you would do. You still haven't done it. We're done. I mean, it just bespeaks finality over and over again. I don't know how it could be understood as anything other than a final decision. Well, we understood the decision to mean that J.A. was off the job. There's no dispute about that, but we did not believe it was a final decision with regards to the dispute over monetary amounts. And if a default termination is found to be unjustified under the statute, it's converted to a termination for convenience, in which place the defaulted contractor can get lost profits, attorney's fees, et cetera and so forth. So at this point, we never expected to return for a third dredging season. I agree, Your Honor. At that point, the dispute was over monetary amounts. And that's why we didn't believe it was any final decision with regards to the monetary amounts. And the cases that have addressed this issue regarding prejudice. So what the government is saying is that, you know, J.A. and his counsel knew the general procedure of how to appeal, so they couldn't be prejudiced. But we've cited two cases, the Swanson case and the Taranowski case. And those are critical cases here, I submit, Your Honors. Because under Swanson, there, a defaulted contractor under the CDA filed a proper appeal back in 1997 or 1998. So the contractor could go through the process. But then seven years later, it received a defective notice, a separate claim. Notice didn't say it was final, didn't say it was appealable to the board or the court. And there, the court held that, and then the contractor appealed the second decision, second claim more than 90 days later. The court said, just because the contractor knew how to do it seven years earlier, that doesn't mean that they weren't prejudiced the second time, because the contractor was, you know, understandably relied on the defective notice, how it wasn't done in accordance with the first time. And the Taranowski case is even more on point. There, it was under an appeal under the Military Services Act, where both the son and the mother are supposed to get notices of how to appeal a classification determination. And they did successful appeals two or three earlier times. On this, on the claimant issue, only the son received notice, not the mother. And the mother did not file a time of appeal, because she didn't think she had the right to, because she did not receive the proper notice. And the court there said that, just because she knew how it was done in the past and the she was actually justified in believing that she didn't have the right to appeal, because she did not receive the notice that she was supposed to receive. I think those two... What was the downside to filing an appeal? We have filed in a, what do you mean, I'm sorry, I hate to answer a question on the question on a button. You get a notice, it's entitled second termination notice, you've got counsel there, counsel, I'm sure knew there was a one year under the CDA, could have easily found it out, as my colleagues pointed out. I have trouble imagining any rationale where, why not file the appeal? Even if you think there's, well, maybe this isn't a final notice, or maybe we've got a really good arguments on a final notice, why not still file the appeal? That's a good question. Counsel, that's time. Can I answer your question, Your Honor? Please do. That's a good question, because there's a whole separate body of law here that's jurisdictional based. You have to exhaust your, basically, your administrative remedies at the corpse level before you can go to the board or the federal court. The law is clear in this, that you need to have a final decision before you can elevate it. We do not believe it was final, because it did not comply with the statutory language. In our claim, you'll see we specifically asked for a final decision. We didn't think we could appeal to a board or a court. That's why we submitted the claim requesting a final decision. In terms of why we waited a year, we thought we had six years, because under the disputes clause it says you can file a certified claim with a contracting officer within six years. You'll see that our claim was not a one or two page claim. It was a 700 plus page claim, complete with historical data, charts, graphs, et cetera, and so forth. We believe we had six years, and Decker says that these regulations are for the protection of the defaulted contractor. There's no dispute that the notice was defective, and the question is, was our reliance on that defective notice prejudicial to us? I respectfully submit that it was, based on the Swanson, the Taranowski cases, which in my sister's papers, they don't differentiate or explain away. Any other questions? Any further? I'll save the rest for rebuttal. You're welcome. Thank you. Thank you, Your Honor. Attorney Pinto, thank you. Please mute your audio and video. Attorney Murphy, please unmute your audio and video and proceed with your argument. Good morning, and may it please the court. Your Honor, the district court was absolutely correct that this notice of termination was a final notice, and it was unreasonable to view it in any other way. If you look at the notice of termination, that's at pages 328 to 329 of your appendix, it says, the contract is hereby terminated in its entirety. Your right to proceed further is terminated, and you have the right to appeal this decision under the disputes clause. And as the district court correctly pointed out in footnote one of its decision, that's at page 1329 of your appendix, the provisions of the disputes clause that are relevant here clearly tell J-Way where it needs to go to find out how to appeal, and it tells J-Way what it has to do, and that that's adequate. So just to respond to Mr. Pinto's point, we do not concede that the notice was defective, Your Honor? The regs also tell you what to do. It tells you that your notice has to say it was final, and that you have to provide the You've also changed the letters that you send out as a result of litigation. We have, Your Honor, as a matter of best agency practice. But just to be clear here, the government's obligation is set forth in section 7103E of the statute. It's to inform the contractor of the contractor's rights as provided in this chapter. And as counsel pointed out, there are actually two different FAR provisions that apply to a default termination uniquely. So we don't know actually why the FAR is written this way, but there are two overlapping provisions that tell contractors what to put in a notice of default termination. I agree with you, Your Honor, that the part 33 general language that belongs to protest disputes and appeals was not in this notice. But as the district court held, and this is at 1337 of your appendix, a notice isn't defective unless it doesn't give adequate notice of the appeal rights. And here, because the contracting officer specifically put in everything that was required by the default termination notice, it was in part 49 of the FAR that deals with the termination of contracts, but that was enough. And I'd just like to point the court to a few cases that are mentioned in the briefs. The Guardian Angels case at page 1246, the Bowman case that we sent in on the 28J, both of those analyze the default termination clause in the exact same way that the district court did and said this was a final notice. I agree they didn't deal with the issue about where the part 33 language was missing, but both of those cases talk about final decisions which clearly only have the part 49 language. And then the RMA case, which the district court correctly relied on, specifically says that that is enough to provide a contractor notice. And I think for all the reasons the district court gave, that's completely correct. If your honors have no further questions, I'd be happy to give you back the rest of the time. Thank you, Counselor. Stephen? Yes, Judge. Attorney Murphy, please mute your audio and video at this time. Attorney Pinta, please unmute your audio and video and proceed with your two minutes of rebuttal. Thank you. First, your honors, with regards to the cases that my sister has just cited, in none of those cases was the defense or was regulation 33.211 raised or addressed by the courts. So those cases are completely inopposite. Secondly, a lot of the cases that my sister has cited in her brief, for example, Placeway, Paradigm, Pathman, all those cases, they do say that sometimes adequate language is sufficient or you don't need border plate language, but those cases did not deal with notices of termination for defaults or statute of limitations or timeliness or prejudice to a defaulted contractor. Those cases say that in a deemed denial claim where a contractor or the contracting officer doesn't issue a decision, they're just silent. So there is no written decision. They say that in that situation, you don't need notice because there is no written decision, but number two, the issue wasn't about timeliness. It was about whether or not the federal court had jurisdiction. So Placeway is about jurisdiction. There's two kinds of bodies of law here. There's cases about whether or not there's an exhaustion, if there's a final decision sufficient to give a board or court jurisdiction, and there's a whole other line of cases, Decker, for example, that say that you need strict compliance with the notice provisions because they're for the protection of the contractor and in those cases have to do with timeliness. So the cases that the government relies on are completely the opposite. They have nothing to do with default terminations, timeliness of appeals, has to do with whether or not there's jurisdiction. And so Placeway, Paradigm, Papen, all inconsequential. Every case that has addressed this issue, specifically whether or not reference to a decision in appeal rights under the Defuse Clause, using that language that was used here, every time that has been addressed by a board or court, and they've also considered FIR 33.211. Counsel, that's time. They've held that it was defective and prejudicial. Thank you, Mr. Pinta. Thank you. Thank you, Judge. That concludes argument in this case. Attorney Pinta and Attorney Murphy, please disconnect from the hearing at this time.